UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORA I. REMSING,

    *Plaintiff*,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

CASE NO. 09-CV-12258

DISTRICT JUDGE NANCY G. EDMUNDS
MAGISTRATE JUDGE CHARLES E. BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 17.)

Plaintiff was 19 years of age at the time of the most recent administrative hearing, which was held on July 8, 2008. (Transcript, Doc. 10 at 12, 77.) Plaintiff has never been employed.

Plaintiff filed the instant claim on August 24, 2006, alleging that she became unable to work on January 1, 1998. (Tr. at 77.) The claim was denied at the initial administrative stages. (Tr. at 51.) In denying Plaintiff's claims, the Defendant Commissioner considered organic mental disorders (chronic brain syndrome) and affective disorders as possible bases of disability. (*Id.*)

On July 8, 2008, Plaintiff appeared before Administrative Law Judge ("ALJ") Paul R. Armstrong, who considered the application for benefits *de novo*. (Tr. at 9-19.) The ALJ concluded that Plaintiff was not disabled. (Tr. at 18.) Plaintiff requested a review of this decision on February 26, 2009. (Tr. at 7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 14, 2009, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On June 11, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Compl., Doc. 1.)

    **B.    Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for

exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*,

336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the

reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that in May 2006 Plaintiff was admitted to Hurley Medical Center Psychiatric Unit after her step-mother found a suicide note in Plaintiff's pants pocket. (Tr. at 141.) The admitting physician, Kang Kwon, M.D., indicated that Plaintiff had major depression, recurrent at Axis I, borderline personality disorder at Axis II, obesity and a self-injurious wound on her forearm at Axis III, was a rape victim and had problems with primary support group at Axis IV, and a GAF of 28. (Tr. at 143.) Plaintiff alleges that she was raped by her step-mother's half-brother in January 2005. (Tr. at 151.) Plaintiff indicated that she has flashbacks of the incident that cause her depression and that she is angry that the perpetrator "got away with it." (Tr. at 151-52.) Plaintiff told her doctor that she is a member of the "cutters club" and that she cuts herself around two times per month and

when upset but that she "doesn't cut deep, only enough to feel the pain." (Tr. at 159.) Plaintiff stated that she has had suicidal thoughts but has not taken any action on them nor does she have any plans to do so. (*Id.*) Plaintiff informed her doctor that she began hearing voices in January 2006. (*Id.*)

Although Plaintiff complained of chest, knee, ankle and right hand pain, x-rays taken of those areas have been normal. (Tr. at 313, 320, 329, 344, 428, 441.) An x-ray of the thoracic spine taken in May 2008 showed "[l]eft sided spondylolysis at L5-S1 without evidence for spondylolisthesis." (Tr. at 459.) An echocardiogram performed in February 2008 showed "normal size cardiac chambers," "normal left ventricular systolic function," "mild mitral valve prolapse with trivial mitral regurgitation," and "no obvious pericardial effusion." (Tr. at 397.)

In February 2007, at the request of the Disability Determination Service, Plaintiff was examined by Christian R. Barrett, Ed.D, who observed that Plaintiff was "in contact with reality," "cooperative," "pleasant," "[m]otivation was satisfactory," "[i]nsight and judgment are partial," "[m]otor activity is normal," "speech is intelligible," "[m]ental processes are slow," but that her "thoughts are well organized" and there was "no pressure of speech or circumstantiality." (Tr. at 360-61.) The doctor also found that Plaintiff's "[a]ffect and mood appeared depressed," that she was "friendly but reserved," "mildly tense and anxious," but that her "conversation skills are fair." (Tr. at 361.) Dr. Barrett found Plaintiff to have a verbal IQ of 71, performance IQ of 58, and full scale IQ of 63, which placed her in the mildly retarded range. (Tr. at 362-63.)

A Mental Residual Functional Capacity (RFC) Assessment conducted in February 2007[2] concluded that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods, and to respond

---

[2] I note that this RFC is entered twice in the administrative record.

7

appropriately to changes in the work setting, but found that Plaintiff was otherwise not significantly limited in any subcategories regarding understanding and memory, sustained concentration and persistence, social interaction, or adaptation. (Tr. at 384-85.) The assessment concluded that Plaintiff's impairments do not meet or equal a listed impairment and that Plaintiff is "young orinted [sic] and retains mental RFC to do simple work under supervision" and that she is "not limited to prevent working" although she has "some dependency on others." (Tr. at 386.)

A Psychiatric Review Technique conducted in February 2007 concluded that Plaintiff has organic mental disorders (learning disabled), affective disorders, and anxiety-related disorders. (Tr. at 370-71.) Plaintiff's specific affective disorders include depressive syndrome, characterized by psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. (Tr. at 373.) Plaintiff's personality disorder is evidenced by pathological dependence, passivity, or aggressivity. (Tr. at 377.) There were no episodes of decompensation noted, a mild degree of limitation in daily living activities and social functioning, and moderate limitations in maintaining concentration, persistence or pace. (Tr. at 380.) It was also concluded that none of Plaintiff's impairments met or equal a listed impairment. (Tr. at 382.)

Plaintiff indicated that she watches television, listens to music, plays games, dresses herself, provides for her own personal hygiene, cooks for herself, shops, and cleans her room. (Tr. at 37, 90-93.)

The ALJ asked the Vocational Expert (VE) to consider a person limited to light exertional duties, who is also "limited to simple, unskilled, SVP one or two jobs, with no more than superficial contact with supervisors, co-employees, and the general public." (Tr. at 46.) The VE testified that appropriate jobs – such as approximately 3,800 jobs as a machine feeder, 3,900 jobs as an assembler, and 2,000 jobs as a sorter – are available in the regional economy. (Tr. at 46.)

The ALJ further asked the VE to consider the same individual with the additional limitation that she has difficulties and would be unable to stay on task and would be off-task for 15 minutes out of every hour because of either depression or lack of comprehension on an even simple, unskilled job. (Tr. at 46.)  The VE responded that such a person would not be employable. (Tr. at 46-47.)

### E.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since August 24, 2006, the application date.  (Tr. at 14.)  At step two, the ALJ found that Plaintiff's borderline intellectual functioning, bi-polar disorder, and depression were "severe" within the meaning of the second sequential step.  (*Id.*)  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (*Id.*)  At step four, the ALJ found that Plaintiff has no past relevant work.  (Tr. at 17.)  At step five, the ALJ found that Plaintiff was a younger person on the date the application was filed and that she is able to perform a full range of work at all exertional levels but was compromised by nonexertional limitations.  (Tr. at 17-18.)  Thus, the ALJ found that Plaintiff was not disabled.  (Tr. at 19.)

### F.     Analysis and Conclusions

#### 1.     Legal Standards

As mentioned, the ALJ determined that Plaintiff possessed the residual functional capacity to undertake a full range of work at all exertional levels but was compromised by nonexertional limitations. (Tr. at 17-18.)  After review of the record, I first suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

9

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that although the ALJ's decision considered Listing 12.05(C), the ALJ failed to properly analyze Plaintiff's mild mental retardation under Listing 12.05(B), which refers to a valid verbal, performance or full-scale IQ of 59 or less. (Doc. 12 at 7-10.) Plaintiff also contends that the ALJ improperly substituted his own opinion for that of Dr. Barrett, a psychologist, who concluded that Plaintiff is functioning within the mildly retarded range. (Doc. 12 at 8.) Plaintiff further argues that the absence of a finding that the IQ test results are valid does not equate with a finding that the test results are invalid. (Doc. 12 at 10.) Plaintiff further contends that the hypothetical's residual functional capacity does not accurately portray Plaintiff's mental restrictions. (Doc. 12 at 10-15.)

Defendant "does not dispute that Plaintiff has such an additional mental impairment, so to be found disabled under Listing 12.05 she must show subaverage general intelligence with deficits in adaptive functioning and a valid IQ score of 70 or less" and, although "Plaintiff makes much of the ALJ's reference to paragraph C rather than paragraph B, . . . his conclusion – that Plaintiff lacked the underlying impairment of mental retardation as required by the Listing – is applicable to all paragraphs." (Doc. 17 at 13.) Defendant also argues that the ALJ properly utilized his discretion in making credibility determinations to favor Dr. Steth's opinion (from the Mental RFC)

10

and to discount Dr. Barrett's assessment. (Doc. 17 at 14-16.) Defendant further contends that Plaintiff "invites the Court to usurp the ALJ's role as the finder of fact and declare the IQ results Dr. Barrett obtained valid," which the ALJ properly doubted based on "Dr. Barrett's own report that Plaintiff may have been putting forth poor effort during another part of the psychological testing" and based on "Plaintiff's own self-reported activities." (Doc. 17 at 16-17.) Finally, Defendant asserts that the ALJ's decision was properly based on substantial evidence. (Doc. 17 at 17-19.)

Plaintiff replies that the ALJ improperly decided the case on his own beliefs rather than the evidence of record showing that Plaintiff has deficits of adaptive functioning, i.e., that Plaintiff does not possess a drivers license, that she has a 2.7 reading grade equivalent; a 2.8 spelling; and a 2.1 arithmetic when she was tested at 20 years old; . . . [that] she suffers from concrete thinking and is unable to think in the abstract . . . [that] [s]he does not even know how to use a stove . . . [as well as] suicidal ideation" and depression, including cutting herself. (Doc. 20 at 4-5.) Plaintiff also maintains that the RFC failed to reflect Plaintiff's moderate impairments in concentration, persistence and pace which would exclude jobs where there are quotas or production requirements. (Doc. 20 at 5.)

Plaintiff concedes, and the Sixth Circuit has held, that in order to meet a Listed Impairment under 12.05, a Plaintiff must satisfy the diagnostic description or definition as well as the severity requirements listed in subsections (A) - (D). 20 C.F.R. § 404.1520, Subpart P, App. 1, Listing 12.05; *Foster v. Haller*, 279 F.3d 348, 354-55 (6th Cir. 2001). Therefore, Plaintiff must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22" and "[a] valid verbal, performance or full scale IQ of 59

or less." Listing 12.05(B). In the instant case, Dr. Barrett assessed that Plaintiff's performance IQ was 58, which, if valid, would satisfy the severity requirement of 12.05(B). The onset of the impairment before age 22 is not challenged.[3] Thus, the issues are whether the IQ test result is valid and, even if so, whether the diagnostic description is satisfied by substantial evidence.

Although Plaintiff argues that the ALJ based his findings on his own opinion rather than the objective evidence, i.e., the IQ test result, courts have held that "it was proper for the ALJ to consider other evidence in the record when determining whether [the plaintiff's] IQ scores were valid" and look to whether "the record contains substantial evidence to support a finding that [the plaintiff's] IQ scores were not an accurate reflection of his intellectual capabilities." *Lax v. Astrue*, 489 F.3d 1080, 1087 (10th Cir. 2007) (citing cases in accordance from the 3rd, 8th, and 11th circuits). A doctor's comments questioning a plaintiff's efforts on the test provide substantial evidence to support the ALJ's determination. *Id.* In addition, "[a]n ALJ may disregard a claimant's IQ score when it is derived from a one-time examination by a non-treating psychologist, particularly if the score is inconsistent with the claimant's daily activities and behavior." *Muncy v. Apfel*, 247 F.3d 728, 733 (8th Cir. 2001). *See also Miles v. Barnhart*, 374 F.3d 694, 699 (8th Cir. 2004) ("the ALJ did not err in relying, in part, on his own observation of [the plaintiff] at the hearing in discounting the IQ score.").

In the instant case, the examining physician, Dr. Barrett, found that Plaintiff's performance IQ was 58; thus, he placed her in the mildly retarded range. (Tr. at 362-63.) However, Dr. Barrett also found that Plaintiff was "in contact with reality," "cooperative," "pleasant," "[m]otivation was

---

[3] I note that IQ testings create a rebuttable presumption of a fairly constant IQ throughout a plaintiff's life; thus, tests conducted after age 22 are probative of IQ prior to that age, unless there is some showing that a plaintiff's condition was transient, the product of an accident, or otherwise developed recently. *Davis v. Apfel*, 133 F. Supp. 2d 542, 547 (E.D. Mich. 2001).

satisfactory," "[i]nsight and judgment are partial," "[m]otor activity is normal," "speech is intelligible," "[m]ental processes are slow," but her "thoughts are well organized" and her "conversation skills are fair." (Tr. at 360-61.)

I suggest that the ALJ's decision to "consider other evidence in the record when determining whether [the plaintiff's] IQ scores were valid" and whether the "IQ scores were not an accurate reflection of [her] intellectual capabilities" was not improper. *Lax*, 489 F.3d at 1087. I further suggest that the ALJ's decision not to rely on the IQ score derived from a "one-time examination by a non-treating psychologist" was not improper since the score was "inconsistent with the claimant's daily activities and behavior." *Muncy,* 247 F.3d at 733; *Miles,* 374 F.3d at 699. The daily activities described by Plaintiff herself – that she is able to watch television, listen to music, play games, dress herself, provide for her own personal hygiene, cook for herself, shop, and clean her room – are inconsistent with the one IQ score that satisfied 12.05(B). (Tr. at 37, 90-93.)

I further suggest that the ALJ's decision is supported by the Mental RFC Assessment and the ultimate conclusion of the assessment that Plaintiff "retains mental RFC to do simple work under supervision," and the Psychiatric Review Technique's conclusion that none of Plaintiff's impairments meet or equal a listed impairment. (Tr. at 382, 386.) I therefore suggest that substantial evidence supports the ALJ's finding that Plaintiff did not meet Listing 12.05 and that Plaintiff was otherwise not disabled.

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

**III.   REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

        s/ **Charles E. Binder**
        CHARLES E. BINDER
Dated: February 4, 2010        United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: February 4, 2010        By    s/Patricia T. Morris
        Law Clerk to Magistrate Judge Binder